UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

Eastern District of Kentucky
FILED
JUL - 9 2008
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 07-150-GWU

WANDA PARLOCK,                                      PLAINTIFF,

VS.                **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,             DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

07-150 Wanda Parlock

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid.

6

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Wanda Parlock, was found by an Administrative Law Judge (ALJ) to have "severe" impairments following her alleged onset date of December 24, 2003 consisting of degenerative disc disease and osteoarthritis of the lumbar spine, peroneal and diabetic neuropathy, a right radial fracture, and diabetes. (Tr. 17-19). The ALJ determined that beginning May 24, 2005, Mrs. Parlock's residual functional capacity was limited to the extent that there were no jobs in the national economy which she was capable of performing, considering her age of 58, high school education, and work experience, and awarded benefits. (Tr. 23-6). Prior to May 24, 2005, however, the ALJ determined that Mrs. Parlock retained the residual functional capacity to perform her past relevant work as a hostess/cashier, and was not entitled to benefits. (Id.). The plaintiff appeals the unfavorable portion of the administrative decision.

Specifically, the ALJ found that prior to May 24, 2005, the plaintiff could perform "light" level exertion, and was able to sit, stand, and/or walk up to six hours each in an eight-hour day. After that date, he found that she could perform only "sedentary" level exertion with no more than two hours of standing or walking per eight-hour day. (Tr. 23). The ALJ found that the plaintiff's past relevant work as a hostess/cashier could have been performed at the light level according to the description in the Dictionary of Occupational Titles (DOT), § 211.462-010 and that this exertional level was also consistent with her job as she had described it in her Work History Report. (Tr. 25, 112).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Mrs. Parlock alleged disability due to problems with her neck, low back, left hip, and leg, as well as diabetes and depression. (Tr. 62). She testified that she had stopped her most recent job as a home health aide because she was unable to perform the sitting and standing required for the job due to pain and inability to control her diabetes. (Tr. 63, 366). At the administrative hearing, she testified that she also had a problem with numbness in her hands with continuous use, and had undergone carpal tunnel surgery in approximately 1995 or 1996. (Tr. 366, 368). Despite the surgery, she had continued to have numbness in her right, dominant hand, and this problem had prevented her from using the keys on a cash register.

8

07-150 Wanda Parlock

(Tr. 369-70). She therefore left her job as a cashier in order to be a home health aide, in which she did not have to use her hands for fine movements. (Tr. 365, 370).

The plaintiff notes on appeal that one of her treating physicians, Dr. Dorsch, had written a prescription pad note saying that she had prior bilateral carpal tunnel surgery with subsequent arthritis and a decrease in the range of motion in her hands. (Tr. 382).[1] She was advised to avoid any type of repetitive motion of her wrists and hands. The plaintiff asserts that it is illogical to find that she could return to her cashier job in view of her testimony that she had quit because she could no longer do it as a result of her pain and numbness. The ALJ had rejected Dr. Dorsch's limitations, however, because they are not documented in any of the medical evidence. (Tr. 24). The ALJ noted that Dr. John Kelly, who treated Mrs. Parlock for low back pain and radiculopathy, had advised her to obtain an EMG/NCV after a complaint of left arm numbness in September, 2002, but she had declined (Tr. 151), and thereafter did not mention the problem. The ALJ further noted that Mrs. Parlock had not complained of hand pain in describing her problems to a psychological consultative examiner, Dr. Teri Caudill, but did indicate that she

---

[1] The signature on the note is almost illegible, although it appears to be that of another physician in Dr. Dorsch's practice, W. E. Reutman. (Tr. 382). Since the plaintiff asserts it was written by Dr. Dorsch (Tr. 380), the court will do likewise, noting that the outcome is not affected.

9

had left the cashier job to obtain a better position, not due to physical problems. (Tr. 229). Finally, the ALJ cited DOT § 354.377-014, Home Health Aide, as requiring "frequent" handling and occasional fingering. The ALJ opined that this would be an indication that the plaintiff would have had to have used her hands a great deal as a home health aide. Therefore, he found her testimony regarding the hand problem to be only partially credible.

Due to the lack of specific evidence regarding carpal tunnel syndrome prior to 2005, the contradictions in the plaintiff's statements regarding her cashier position, and the DOT's description of the motions which would be required to perform the job of home health aide, the court finds that there was substantial evidence to support the ALJ's conclusion.

The plaintiff additionally argues that the ALJ erred in finding that she was not disabled on the basis of pain. However, Dr. Kelly, who was specifically treating Mrs. Parlock for her pain complaints beginning in August, 2001, repeatedly noted that the plaintiff's medications were controlling her pain very well most of the time, and when the plaintiff complained of additional pain, increases in dosages were effective. (Tr. 141, 143-4, 155, 167, 169-71, 325). His examinations were generally normal except for a finding of lumbar tenderness until October, 2004, when the plaintiff began complaining of increasing radicular symptoms. At that time, he noted that her lumbar range of motion was full, but very slow. (Tr. 327-8). Dr. Kelly obtained an

MRI of the lumbar spine which showed "mild" stenosis, a "small" central disc hernation, and "moderate" facet hypertrophy, with no definite neural impingement. (Tr. 329). However, he noted that it appeared unchanged from an April, 2000 MRI. (Tr. 330). As late as May 17, 2005, he indicated that the plaintiff still had "reasonable pain control" and was able to do most of her daily activities. (Tr. 334). She denied adverse side effects from the medications. (Id.). Under the Duncan standard outlined in the Applicable Law section of this opinion, it is apparent that the plaintiff had an underlying medical condition which could have been expected to cause pain. Based on the MRI results, however, it does not appear that there is any evidence that the condition objectively worsened between April, 2000, before she stopped working, and October, 2004, when a new MRI was obtained. Moreover, while her physician clearly felt that the problem was serious enough to warrant the use of significant pain control measures, these measures were reportedly satisfactory, with periodic adjustments, prior to the onset date selected by the ALJ.[2] The objective physical findings listed by the physician did not include anything more than a slow lumbar range of motion. The plaintiff had informed the consultative

---

[2]The ALJ selected the onset date of May 24, 2005 because Mrs. Parlock had been admitted to St. Luke West Hospital in June, 2005 after falls with possible syncope (Tr. 314), and Dr. Dorsch had noted a left foot drop on his examination (Tr. 318). A subsequent EMG/NCV showed prominent peroneal neuropathy on the left side. (Tr. 303). Although there was no specific opinion from a physician regarding functional restrictions, the ALJ concluded that the plaintiff's neuropathy along with her back pain would limit her to sedentary work. (Tr. 24).

11

07-150 Wanda Parlock

examiner, Dr. Caudill, that as of June, 2004, she was capable of doing household chores that did not involve lifting or pushing, such as laundry and infrequent vacuuming, and spent part of her time taking care of her dogs and walking them in the back yard. (Tr. 229). This description indicates some level of pain, but is not entirely consistent with the plaintiff's contention that she was incapable of performing any significant exertional activities. Therefore, the ALJ had a reasonable basis for discounting her subjective complaints.

The decision will be affirmed.

This the 9th day of July, 2008.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**